1

2                                                          FILED IN THE
                                                        U.S. DISTRICT COURT
                                                    EASTERN DISTRICT OF WASHINGTON
3
                                                        Apr 13, 2021
4
                                                        SEAN F. McAVOY, CLERK

5                          UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF WASHINGTON
6

7    CARIE L.,[1]                          No.    4:20-CV-5058-EFS

8                    Plaintiff,            **ORDER DENYING PLAINTIFF'S
                                           SUMMARY-JUDGMENT MOTION
9         v.                               AND GRANTING DEFENDANT'S
                                           SUMMARY-JUDGMENT MOTION**
10   ANDREW M. SAUL, the Commissioner
     of Social Security,
11
                     Defendant.
12

13

14        Before the Court are the parties' cross summary-judgment motions.[2]

15   Plaintiff Carie L. appeals the denial of benefits by the Administrative Law Judge

16   (ALJ). She alleges the ALJ erred by 1) discounting her treating provider's opinion,

17   2) determining that her impairment did not meet or equal Listing 12.04, 3)

18   discounting her symptom reports, 4) failing to properly consider lay statements,

19   _____

20   [1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

21   first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

22   [2] ECF Nos. 19 & 20.

23

     ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

and 5) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 19, and grants the Commissioner's Motion for Summary Judgment, ECF No. 20.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of May 1, 2016.[18] Her claims were denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Plaintiff met the insured status requirements through December 31, 2021;

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 202-17 & 219-24.

[19] AR 120-29 & 132-39.

[20] AR 37-71.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step one: Plaintiff had not engaged in substantial gainful activity since May 1, 2016, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairment: bipolar disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels but with the nonexertional limitations of that she needs a routine, predictable work environment with no more than occasional changes, and no travel required as a job duty;

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as industrial cleaner, kitchen helper, and laundry worker II.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the testifying opinions of Michael Lace, Psy.D., and

---

[21] AR 10-28.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- little weight to the treating opinion of Suzanne Kieffer, MSW, and the reviewing opinions of Michael Brown, Ph.D., and Matthew Comrie, Psy.D.[22]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23] Likewise, the ALJ discounted the lay statements from Plaintiff's mother, daughter, and friend.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere

---

[22] AR 20-21.

[23] AR 19-20.

[24] AR 18.

[25] AR 1-4.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

---

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## IV.    Analysis

## A.    Medical Opinions: Plaintiff fails to establish error.

Plaintiff challenges the ALJ's assignment of little weight to Ms. Kieffer's treating opinion. As discussed below, the Court finds Plaintiff fails to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

### 1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[35] The opinion of an "other" medical source[36] may be rejected

---

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[35] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[36] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

### 2. Ms. Kieffer, MSW, LICSWA

From the fall of 2016 through 2018, Ms. Kieffer conducted therapy sessions with Plaintiff. In February 2019, Ms. Kieffer issued a Mental Residual Functional Capacity Assessment, wherein she opined that Plaintiff was:

- severely limited in all mental activities pertaining to the categories of Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaption,

- extremely limited in the B Criteria for understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace,

- markedly limited in the B Criteria for interacting with others, or adapting or managing herself,

- likely to decompensate with even a minimal increase in mental demands or changes in the environment, and

---

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2

- likely to be off-task and unproductive less than 12 percent of the work week and miss 4 or more days per month.[39]

3

Ms. Kieffer offered the following "comments" on the assessment form:

4

5

6

7

8

9

10

> Carie's Bipolar II Disorder. A distinct period of abnormally and persistently elevated, expansive and irritable mood and she has increased activity and energy, lasting at least 4 consecutive days which is present most of the day, nearly every day. Present are decreased need for sleep, more talkative and pressured thoughts. Very distractive drawn to unimportant or irrelevant external stimuli. These episodes are severe in nature and are NOT attributed to the psychological effects of a substance. Carie has been noted as a long persistent full hypomanic episode occurring at significant long periods of time making cognitive everyday functioning a challenge for her every day. Carie has been using CBT and Behavioral modification with very limited benefits, but she remains consistent with her treatment and therapy.[40]

11

12

13

The ALJ discounted Ms. Kieffer's opinion because it was 1) inconsistent with the mental health treatment notes, 2) inconsistent with Plaintiff's daily living activities, and 3) internally inconsistent.

14

15

16

As to the ALJ's finding that Ms. Kieffer's extreme opinion was not supported by the mental health treatment notes, an ALJ may permissibly reject opinions that are not adequately supported by the medical records.[41] Here, the ALJ rationally

17

18

19

[39] AR 642-45.

[40] AR 645.

20

21

22

[41] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical

23

found that the largely non-extreme mental health findings in the treatment record were inconsistent with Ms. Kieffer's opinion. Although Plaintiff was observed with depressed affect, irritable behavior, impacted speech, and difficulty with recall during some appointments, the vast majority of the mental health records reflect good hygiene, good eye contact, good speech, good to fair mood and affect, fair insight and judgment, and sufficient memory and concentration.[42] The ALJ's

---

opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole).

[42] *See, e.g.*, AR 482 (Dec. 2016: tearful when talking about mom's health but open and engaged with appropriate eye contact); AR 456 (March 2017: good eye contact and improved mood stability); AR 441 (March 2017: speech average rhythm, congruent and appropriate mood and affect); AR 590 (May 2017: normal speech with good eye contact, bright affect, and good insight and judgment); AR 582 (Aug. 2017: normal eye contact, average speech, and congruent and appropriate mood and affect); AR 550 (Feb. 2018: reporting happy to be back in therapy after missing for a couple of months, thoughts were logical but a little tangential, speech was somewhat pressured, affect was congruent with happy good, good insight into behaviors); AR 541 (April 2018: she is calm, pleasant, cooperative, smiling, with good hygiene, fluent voice with regular rate and volume, mild hyper verbal activity because she is excited about having 9 kittens, thoughts are expressed in a linear,

finding that Ms. Kieffer's extreme opinion is not supported by the mental health treatment records is supported by substantial evidence and was a germane reason to discount her opinion.

Second, the ALJ discounted Ms. Kieffer's extreme opinion because it was inconsistent with Plaintiff's reported activities. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity or if claimant's activities are easily transferable to the workplace environment.[43] Here, the ALJ found that contrary to Plaintiff's alleged memory and concentration problems, Plaintiff was the sole care provider for her mother, cooked full meals, provided pet care, completed hours of chores per day, drove, shopped, planned vacations, worked in her garden regularly, and handled financial matters without issue.[44] The ALJ

---

goal directed manner, and insight and judgment fair); AR 522 (July 2018: cooperative, interactive, good eye contact, normal rate of speech, thought process logical but not future focused, mood and affect congruent with some depression and anxiety, insight and judgment fair, and orientation and attention intact); AR 517-20 (Sept. 2018); & AR 506 (Dec. 2018: speech is rapid and she is hyperverbal with limited judgment but speech is not pressured as she verbalized excitement about upcoming holidays and many events she has been participating in).

[43] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[44] AR 19 (citing AR 270-77, 506, 521, & 536-37).

also found that contrary to Plaintiff's alleged interactive deficits, Plaintiff shopped in public stores for necessities, drove, attended church, took her son to school, attended family functions, attended scheduled appointments, and volunteered at church and school functions. The ALJ's finding that Plaintiff's level of activity, albeit becoming more limited when her mental health waxed, was not consistent with Ms. Kieffer's extreme opinion is rational and supported by substantial evidence. This was a germane reason to discount Ms. Kieffer's extreme opinion.

Finally, the ALJ discounted Ms. Kieffer's opinion because it was internally inconsistent. An ALJ may discount a medical opinion if it is internally inconsistent and not supported by medical findings.[45] Here, Ms. Kieffer initially opined that Plaintiff was severely limited (as opposed to markedly limited) in each of the listed abilities: memory, social interaction, adaption, and concentration abilities. But under the B Criteria, Ms. Kieffer opined that Plaintiff was only markedly limited (rather than extremely limited) in her abilities to interact with others and adapt or manage herself.[46] In her lengthy comments, Ms. Kieffer does not explain why she made these different findings in the initial section versus the B Criteria section. Given that this inconsistency is not explained by Ms. Kieffer's opinion itself or by the underlying treatment notes, this was a germane reason supported by substantial evidence to discount her opinion.

---

[45] *See Lingenfelter*, 504 F.3d at 1042.

[46] AR 20 (citing AR 642-44).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff fails to establish that the ALJ erred when discounting Ms. Kieffer's opinion.

**B.      Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listing 12.04.

Listing 12.04 disorders, which include bipolar disorders, are "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning."[47] Symptoms and signs can include "feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal."[48] The impairment must also meet paragraphs B and C criteria. Paragraph B criteria are met if the impairment results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[49] Paragraph C criteria are met if the mental disorder is serious

---

[47] 20 C.F.R. Pt. 404, Subpt. P, App 1, Listing 12.04 at A(3).

[48] *Id.*

[49] 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00 at A(2)(b).

and persistent, i.e., there is a medically documented history of the existence of the disorder over a period of at least two years and the claimant relies on ongoing medical treatment to diminish the symptoms and signs of the mental disorder, and despite the ongoing treatment the claimant has only achieved marginal adjustment.[50]

Here, Ms. Kieffer opined that Plaintiff was markedly limited and extremely limited in each of the B Criteria. However, as explained above, the ALJ rationally discounted Ms. Kieffer's opinion. Plaintiff fails to establish that the other medical opinions or evidence of record satisfies the Listing 12.04 requirements.[51]

**C.    Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[52] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific,

---

[50] *Id.* at Listing 12.00.G.

[51] *See* Social Security Ruling (SSR) 17-2p (permitting the ALJ's listings findings to be read in conjunction with the entire ALJ decision).

[52] *Molina*, 674 F.3d at 1112.

clear and convincing reasons' for the rejection."[53] Here, the ALJ found Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms inconsistent with: the objective medical evidence, evidence indicating

that her lack of employment was due to non-impairment reasons, her level of daily

activity, her contemporaneous reports to medical providers, the properly

considered medical opinions, and her noncompliance with treatment.[54]

First, as to the ALJ's finding that Plaintiff's symptom reports were

inconsistent with the objective medical evidence, symptom reports cannot be solely

discounted on the grounds that they were not fully corroborated by the objective

medical evidence.[55] However, objective medical evidence is a relevant factor in

considering the severity of the reported symptoms.[56] "Objective medical evidence"

means signs, laboratory findings, or both.[57] In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities
> that can be observed, apart from [the claimant's] statements
> (symptoms). Signs must be shown by medically clinical diagnostic
> techniques. Psychiatric signs are medically demonstrable phenomena
> that indicate specific psychological abnormalities, e.g., abnormalities
> of behavior, mood, thought, memory, orientation, development, or

---

[53] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504

F.3d at 1036).

[54] AR 19-21.

[55] *See Rollins*, 261 F.3d at 857.

[56] *Id.*

[57] 20 C.F.R. §§ 404.1502(f), 416.902(k).

perception, and must also be shown by observable facts that can be medically described and evaluated.[58]

When considering the objective medical evidence, the ALJ may consider whether a claimant's conditions improved with treatment.[59] Here, as discussed above, the ALJ rationally found, in contrast to Plaintiff's reported disabling mental-health symptoms, that the longitudinal mental status examinations generally revealed mood stability with adequate concentration and memory with treatment, consistent with the RFC limitations.[60] This finding was supported by substantial evidence was a relevant factor for the ALJ to consider.

---

[58] *Id.* §§ 404.1502(g), 416.902(l).

[59] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[60] *See, e.g.*, AR 367 (Apr. 2016: reporting slight improvement with memory and feeling more settled); AR 444 (Feb. 2017: expressing thoughts in linear, goal-directed manner, alert and fully orientated, insight and judgment remain poor to fair, and reporting improved mood stability and anxiety in control); AR 446 (Apr. 2017: reporting that mood is much better and not as depressed or irritable, affect is euthymic with restricted range, voice is fluent with regular rate, thoughts expressed in linear, goal-directed manner, and insight and judgment remain fair); & AR 449-50 (March 2017: speech is normal rate with good eye contact, reporting really good mood, bright affect, thought process is linear and goal directed).

Second, the ALJ discounted Plaintiff's disabling symptom reports because the evidence indicated that her lack of employment was due to non-impairment reasons. An ALJ may consider whether the claimant has not worked for reasons unrelated to the alleged disability.[61] Here, Plaintiff ceased her most recent job in order to move and take care of her parents.[62] The ALJ also highlighted that Plaintiff continued to seek out work.[63] On this record, even though Plaintiff's mental health symptoms occasionally waxed, the ALJ reasonably concluded that Plaintiff's reported disabling symptoms were inconsistent with her reason for ceasing employment and her attempt to look for work. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

Third, the ALJ discounted Plaintiff's disabling symptom reports because they were inconsistent with her level of daily activity. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities

---

[61] *See Tommasetti*, 533 F.3d at 1040; *Bruton*, 268 F.3d at 828 (sufficient reasons for disregarding subjective testimony include stopping work for nonmedical reasons and failure to seek care for allegedly disabling condition at the time claimant stopped working).

[62] AR 44, 49, 67, 271, 374, & 382.

[63] AR 19 (citing AR 382 & 478).

inconsistent with the reported disabling symptoms.[64] Here, the ALJ highlighted that Plaintiff was the sole care provider for her mother, cared for her son, cooked full meals, provided pet care, completed hours of chores per day, drove, shopped in public stores, planned vacations, worked in her garden regularly, handled financial matters without issue, attended church, attended family functions, attended scheduled appointments, and volunteered at church and school functions.  Given the cumulative scope and nature of Plaintiff's activities, the ALJ reasonably found that Plaintiff's daily activities were inconsistent with her reported inability to perform and sustain work due to her mental health impairment.[65] This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's disabling symptom complaints.

Fourth, the ALJ discounted Plaintiff's disabling mental health symptom reports because they were inconsistent with her contemporaneous reports to medical providers. An ALJ may discount a claimant's symptom reports on the basis of inconsistent statements.[66] The ALJ must be mindful as to whether a claimant's

---

[64] *Molina*, 674 F.3d at 1113.

[65] *See Molina*, 674 F.3d at 1112-13.

[66] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19

conflicting symptom reports or exaggerated symptoms were caused by the claimant's psychiatric conditions.[67] Here, the ALJ reasonably found that Plaintiff often reported increased mood stability and improvements in functioning to her care providers.[68] Even when Plaintiff's mental health waxed, Plaintiff reported to her care provider that her symptoms did not cause her any significant impairment.[69] The ALJ's finding that Plaintiff reported less severe symptoms to her medical providers is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

Fifth, the ALJ discounted Plaintiff's reported disabling mental-health symptoms because they were inconsistent with the properly considered medical opinions. An ALJ may consider whether the claimant's symptoms are supported by

---

[67] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

[68] *See, e.g.*, AR 566 (Dec. 13, 2017: "At this time she has no chief complaints and feels her medications are effective [sic] maintaining mood stability."); AR 537 (May 10, 2018: reporting "a really good month" and "I am handling my stress and everything is going smoothly right now"); AR 532 (June 18, 2018: Plaintiff "says she feels like she is doing better, she is stable on her progress."); AR 524 (June 28, 2018: Plaintiff "is maintaining mood stability."); AR 515 (Oct. 11, 2018: "I have not had any highs or lows, so this is good. I feel that I am pretty stable."); & AR 493 (Oct. 24, 2018: reporting stable mental health "for quite some time").

[69] AR 484.

the medical opinions.[70] Here, the ALJ only gave great weight to Dr. Lace's testifying opinion.[71] Dr. Lace testified that the medical record demonstrated that Plaintiff had achieved relative mental health stability after moving across the state to care for her parents and opined that Plaintiff could perform a job with routine and without changes in location or travel.[72] As discussed above, the medical record indicated that Plaintiff's mental health largely stabilized with treatment, or stabilized to such degree that the ALJ rationally found that Plaintiff could perform a job with a routine, predictable work environment with no more than occasional changes and no travel. On this record, the ALJ reasonably found that Plaintiff's reported disabling mental-health symptoms were inconsistent with Dr. Lace's

---

[70] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

[71] The medical record also included Ms. Kieffer's opinion, which the ALJ discounted for the reasons discussed above. The ALJ also discounted the reviewing state agency psychological consultants' opinions that Plaintiff could complete simple, routine, repetitive tasks, could concentrate adequately on such tasks, and could carry out routine social interactions. The ALJ discounted these opinions because they failed to assign adaptive and social interaction limitations even though they found moderate limitations in those areas, and the task-complexity limitation was not supported by substantial evidence.

[72] AR 42-48.

opinion. This finding was supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.

Finally, the ALJ discounted Plaintiff's reported disabling mental-health symptoms because of her noncompliance with treatment, particularly her failure to consistently take her mental-health medicine. Noncompliance with medical care can cast doubt on a claimant's subjective complaints.[73] Here, because the ALJ offered several other reasons supported by substantial evidence for discounting Plaintiff's reported disabling mental-health symptoms, the Court need not decide whether the ALJ's decision to discount Plaintiff's symptoms because she did not consistently take her mental-health medication was a clear and convincing reason supported by substantial evidence.

In summary, Plaintiff fails to establish the ALJ erred by discounting her symptom reports.

### D.    Lay Witness: Plaintiff fails to establish error.

The ALJ discounted Plaintiff's mother's, daughter's, and friend's statements because their reports essentially corroborated Plaintiff's allegations, including deficits in memory, understanding, task completion, concentration, and frequent mood swings, which were not supported by objective or observational findings in the medical record.[74] "Testimony by a lay witness provides an important source of

---

[73] *Fair*, 885 F.2d at 603.

[74] AR 18.

information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."[75]

In 2017, Plaintiff's friend reported that Plaintiff required reminders to perform and focus on simple tasks, she did not go out as often and stayed home a lot, that she was tired due to not sleeping well, and she did not handle stress or change in routine well.[76] In 2019, Plaintiff's mother reported that Plaintiff's mood fluctuated, she sometimes said hurtful things, she had shared on several occasions that she did not feel that she needed to take her medication, she got confrontational with others over minor matters, and she lacked judgment when she was manic.[77] Also, in 2019, Plaintiff's daughter explained that her mother's moods changed often, her mom often said hurtful things she didn't mean, she had sleeping difficulties, and she did not take her medicine consistently at times because she believed she did not need them or they made her feel sick.[78]

The ALJ's decision to discount these lay statements is rational and supported by substantial evidence. On this record, which included numerous mental-health records indicating that Plaintiff's mood, memory, concentration, and presentation (other than being verbose or chatty) were largely appropriate or

---

[75] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[76] AR 278-85.

[77] AR 352.

[78] AR 350-51.

normal, other than when discussing sensitive familial issues, was a germane reason to discount Plaintiff's statements for the same reasons that the ALJ discounted Plaintiff's reported similar symptoms.[79]

Plaintiff fails to establish err by the ALJ in this regard.

## E.    Step Five: Plaintiff fails to establish error.

Plaintiff argues that the ALJ's hypothetical and RFC failed to consider her limitations from her mental health impairment. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."[80] However, Plaintiff's argument merely restates her earlier allegations of error, which are not

---

[79] *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). *See, e.g.*, AR 482 (Dec. 2016: tearful when talking about mom's health but open and engaged with appropriate eye contact); AR 456 (March 2017: good eye contact and improved mood stability); AR 441 (March 2017: speech average rhythm, congruent and appropriate mood and affect); AR 590 (May 2017: normal speech with good eye contact, bright affect, and good insight and judgment); AR 582 (Aug. 2017: normal eye contact, average speech, and congruent and appropriate mood and affect); & AR 550 (Feb. 2018: reporting happy to be back in therapy, thoughts were logical but a little tangential, speech was somewhat pressured, affect was congruent with happy good, and good insight into behaviors).

[80] *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

supported by the record. Accordingly, the ALJ's hypothetical and RFC properly accounted for the limitations supported by the record.[81]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 13th day of April 2021.

> s/Edward F. Shea       .
> EDWARD F. SHEA
> Senior United States District Judge

---

[81] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (allowing ALJ to limit a hypothetical to restrictions supported by substantial evidence).